Gregory B. Smith (USB #6657)
**GREG SMITH & ASSOCIATES** (ALAPC)
111 East 5600 South, Suite 105
Murray, Utah 84107
Telephone: (801) 651-1512
Fax: (801) 255-2134
E-mail: gs@justiceinutahnow.com
  *Attorney for Plaintiff, Krista Keel*

IN THE UNITED STATES DISTRICT COURT,
STATE OF UTAH, CENTRAL DIVISION (SALT LAKE CITY)

| | |
|---|---|
| KRISTA KEEL,<br><br>  Plaintiff,<br><br>v.<br><br>O'REILLY AUTO ENTERPRISES, LLC,<br><br>  Defendant. | **COMPLAINT**<br><br><br><br>Case Number:<br><br>Jury Trial Demanded |

Plaintiff, KRISTA KEEL, hereby complains against Defendant, O'REILLY AUTO

ENTERPRISES, LLC, demanding a trial by jury, and seeking relief as follows:

## I. PARTIES

  A. The Plaintiff is a Utah citizen who resides in Roosevelt, Duchesne County, UT.

  B. The Defendant, O'Reilly Auto Enterprises, LLC is a foreign Limited Liability

Company (Utah Entity Number: 8910727-0161; Address: 233 South Patterson, Springfield, MO, 65802; State of Origin: DE; Registered Agent: CT Corporation System; Registered Agent Address: 1108 E. South Union Avenue, Midvale, UT, 84047).

C. The Plaintiff is currently employed by the defendant(s) at the Roosevelt store (store #3166) in Roosevelt, Duchesne County, Utah.

## II. JURISDICTION AND VENUE

This action is brought pursuant to: Fair Labor Standards Act, as codified, 29 U.S.C. §§ 201 to 209. Venue is proper in this Court, pursuant to Utah Code § 78B-3-304(2) because work was performed in the State of Utah.

## III. STATEMENT OF FACTS/CLAIM

1. Defendant is a national supplier of auto parts, who is a covered enterprise for purposes of the United States Fair Labor Standards Act (FLSA).

2. Plaintiff, while working for Defendant, has at all times been a non-exempt employee.

3. Plaintiff was hired by Defendant on or about August 10th, 2014 as a Delivery Driver for the Roosevelt location (store #3166) in Roosevelt, Duchesne County, UT.

4. Plaintiff is still employed for Defendant at the Roosevelt location.

5. After Plaintiff contacted Human Resources about mileage reimbursement owed but not yet paid, Plaintiff became subject to retaliation.

6. Plaintiff has experience retaliation in the form of (a) an informal demotion; (b) salary

reduction, in the form of reduced hours and opportunities to earn a commission; and (c) public discipline and humiliation.

7. Additionally, Plaintiff has not been paid her proper wages pursuant to the law.

8. Plaintiff delivers auto parts from Defendant's store locations to mechanics, auto shops, and other businesses who have ordered parts from O'Reilly Auto Parts.

9. Plaintiff's job duties also include stocking shelves, working directly with customers, and cashiering at the front counter.

10. Plaintiff's rate of pay upon hire was $9.50 per hour.

11. Plaintiff also received a sales commission when she helped customers and worked at the cash register.

12. Plaintiff received at least six (6) awards for excellent customer service and has earned monetary bonuses for meeting and exceeding her sales goals.

13. Plaintiff was given two (2) pay raises in 2016, in April and September:

    a. As of April 14th, 2016, Plaintiff's rate of pay was raised to $10.00 per hour after a $0.50 per hour pay raise.

    b. As of September 1st, 2016, Plaintiff's rate of pay was raised to $10.40 per hour after a $0.40 per hour pay raise.

14. On numerous occasions, Plaintiff worked and was paid overtime. However, Plaintiff has not been paid all the overtime she is owed by Defendant.

15. Approximately six (6) to eight (8) months after her hire, Defendant began to schedule

Plaintiff to work at the Vernal location (store #2974) in Vernal, Uintah County, UT.

16. Approximately eighteen (18) months after her hire, Defendant began to schedule Plaintiff to work at the Heber location (store #3664) in Heber City, Wasatch County, UT.

17. The time Plaintiff spent driving often pushed her beyond forty (40) hours per week. She was not paid properly for that overtime.

18. <u>From Roosevelt to Vernal, UT - Travel Time and Distance</u>

   a. *Travel distance.* Per Google maps, the approximate distance between Defendant's Roosevelt store and Vernal store is 29 or 33 miles one way, depending on the route driven.

   b. The approximate distance round-trip is 58 or 66 miles.

   c. *Travel time.* In average conditions, estimated drive time is 31-45 minutes one way.

   d. Estimated total drive time, round-trip, is 62-90 minutes.

19. <u>From Roosevelt to Heber City, UT - Travel Time and Distance</u>

   a. *Travel distance.* Per Google maps, the approximate distance between Defendant's Roosevelt store and Heber City store is 97 miles one way.

   b. The approximate distance round-trip is 194 miles.

   c. *Travel time.* In average conditions, estimated drive time is 1 hour and 36 minutes one way.

   d. Estimated total drive time, round-trip, is 192 minutes.

20. Plaintiff was offered compensation for *either* miles driven *or* driving time when she was scheduled to work at another store.

21. In other words, Plaintiff was not compensated for both miles driven (including wear and tear on her vehicle) *and* driving time.

22. Plaintiff always chose compensation for miles driven in order to be able to afford gas for the drive home.

23. Plaintiff is owed for no less than 62 minutes of driving time **for each time** she traveled to the Vernal location to work.

24. Plaintiff is owed for at least 192 minutes of driving time **for each time** she traveled to the Heber City location to work.

*Mileage Reimbursement*

25. As of the date of this action, Plaintiff has received reimbursement for each mile driven between stores.

26. However, the amounts were not correct and did not comport with IRS standards, which has affected Plaintiff's unpaid overtime amounts.

27. Plaintiff was reimbursed approximately $0.32 per mile by the Heber store manager for all miles driven to and from the Heber location.

    a. The Heber store manager reimbursed all of Plaintiff's miles with cash from the Heber store each time she worked at that location.

28. Per monthly expense reports, Plaintiff was reimbursed $0.35 per mile for miles driven to

the Vernal location.

29. Plaintiff was only reimbursed $0.29 per mile for miles driven to the Vernal location.

30. Discovery is needed to determine whether Plaintiff has been reimbursed properly and in full for the miles she drove.

*Retaliation*

31. On or about December 7, 2016, Plaintiff placed a call to the corporate office in good faith about the FLSA issues.

32. She spoke to a woman named Bonnie in Accounts Receivable about Plaintiff's approximately three (3) months' worth of mileage reimbursement, which Plaintiff had not yet received.

33. The procedure for submitting miles driven to and from the Vernal location was as follows:

    a. Plaintiff submitted her mileage to the Vernal store manager, Leah Campbell.

    b. Leah verified Plaintiff's mileage, signed off on Plaintiff's mileage report, and faxed Plaintiff's report to the corporate office for approval and payment.

    c. Plaintiff would receive a separate mileage reimbursement by check or 'cash card' deposit.

34. The Roosevelt store manager, Kirk Campbell, and the Vernal store manager, Leah, are married.

35. Neither the Roosevelt store manager, Kirk Campbell, nor Leah stated clearly what the

turnaround time was for mileage reimbursement payments.

36. Kirk stated at least once that the turnaround time should be no more than six (6) weeks.

37. In November of 2016, Plaintiff's husband injured himself at work and could not immediately return to work.

38. Plaintiff was concerned about making rent.

39. Plaintiff had not yet been reimbursed for miles driven since September 1, 2016.

40. On or about December 7, 2016, Plaintiff confirmed with Kirk via text message that her reimbursement check had not yet come in.

41. Plaintiff contacted the corporate office.

42. Bonnie at the corporate office stated she had no mileage record for Plaintiff.

43. Bonnie told Plaintiff if Leah could submit Plaintiff's miles again, Bonnie could send Plaintiff all three (3) months' mileage reimbursement within a few days.

44. Plaintiff texted Leah to apprise her of the situation and request that her miles be submitted to Corporate again.

45. Leah's response was, 'That is not how we do things.'

46. Plaintiff indicated she did not think the labor laws worked that way, then Leah stated she no longer needed Plaintiff in her store.

47. Kirk discouraged Plaintiff from contacting Corporate further and making the situation worse.

48. On or about June 17, 2017, Plaintiff received managerial permission to close for a

co-worker Paul. Plaintiff really needed the hours.

49. Around 1:30 p.m. that same day, Plaintiff was told that Kirk did not want her to work the extra hours and that he was going to bring someone from a store 40 minutes away to work the shift.

50. Plaintiff was already at the store and willing and able to cover the shift.

51. Defendants did this to retaliate against Plaintiff for having raised wage and hour (FLSA) issues.

*Salary Reduction & Reduced Hours*

52. The week Plaintiff contacted Leah about the issue, Plaintiff was scheduled to work three (3) days from 10 a.m. to 6 p.m.

53. The week that followed, Plaintiff was supposed to work three (3) days from 11 a.m. to 3 PM.

54. Plaintiff was removed entirely from the Vernal location schedule.

55. Thus, Plaintiff was deprived approximately 36 hours of work at the Vernal location. At her regular hourly rate of $10.40 per hour, Plaintiff would have earned approximately $374.40 gross.

56. After Plaintiff was removed entirely from the Vernal schedule, she was told that employees would no longer be traveling between the Roosevelt and Vernal locations or be reimbursed for their mileage.

57. While this has not held true, Plaintiff is no longer permitted to work from another

location.

58. As of on or about December 8th, Plaintiff reached out to Kirk several times in an effort to discuss being added to the Roosevelt schedule.

59. Plaintiff also reached out to Richard Potter, another Roosevelt employee who managed scheduling.

60. Richard told Plaintiff he could not schedule her without Kirk's approval.

61. Kirk either would not respond to Plaintiff, or state that (1) the schedule was done and he would work Plaintiff in if someone got sick, (2) he was cutting hours for the week, (3) he was over on payroll, (4) he was not going to knock someone off of the schedule for Plaintiff, etc.

62. Plaintiff was first offered a shift on or about December 17th, when Richard contacted Plaintiff about a shift that had opened up. Richard also scheduled Plaintiff to work December 24th.

63. In January of 2017, Plaintiff was scheduled to work several Saturdays. Plaintiff was called each time just before her shift and told to not come in.

64. In early February of 2017, Plaintiff was told to not come in because Kirk had no hours to spare.

65. Since Plaintiff's call to Corporate, Plaintiff's scheduled hours and earnings are historically low compared to the last two (2) years.

66. Further, Tammy Chacon (another 'boss' at the Roosevelt location) told Plaintiff she was

not allowed on the front counter,

67. and that she was only allowed to clean in the back room, which was done to humiliate Plaintiff.

68. On or about December 31, Plaintiff was told again to stay in the back room and clean.

69. Plaintiff reached out to Leah, Kirk and others about why she was not allowed to help customers or work in front.

70. For approximately three (3) months, no one offered Plaintiff an explanation as to why she was not allowed to help customers or work in front.

71. On or about March 11, 2017, Plaintiff was scheduled to work at the Roosevelt location.

72. When she arrived, Kirk pulled co-worker Jeremy and Plaintiff aside.

73. Kirk said Plaintiff was not able to help customers due to customer complaints, but Plaintiff had not been written up for such, and was unaware of any particular customer that had complained.

74. Plaintiff cannot recall any prior complaint from an employee or customer.

75. Prior, Plaintiff had received several service awards and had been shown positive customer reviews.

76. To Plaintiff's knowledge, she had never before received a complaint from a customer or employee.

77. Plaintiff asked to see the complaint(s). Kirk refused to show her any.

78. Plaintiff was given a verbal warning to 'straighten up her attitude.' Kirk said if she didn't

like it, she could quit - in other words, she has been leaned on, so that she will leave.

79. As far as Plaintiff could tell, co-worker Jeremy was present solely to hear the conversation.

80. This was the only explanation Plaintiff was given.

### *Public Discipline & Humiliation*

81. Plaintiff has since been corrected and/or humiliated in front of a customer more than once as a direct result of her raising the FLSA issues.

82. On at least one occasion, Plaintiff had an item taken out of her hands and was told she was not allowed to help customers, in front of a customer.

83. As a direct result of Plaintiff's raising the FLSA issues, Defendant has reduced her pay by cutting her hours.

84. Because of such, Plaintiff had to sell a motorhome (could no longer make the payments because of the reduction of pay), which caused her financial loss of thousands of dollars.

85. In order to give the Court an accurate amount of her unpaid overtime damages, discovery will be needed, but she estimates such of being at least $700.

### IV.   RELIEF REQUESTED

86. Plaintiff seeks relief in the form of an order that requires (1) payment to her by Defendant for proper wages not yet paid and proper reimbursement of all her expenses (including car wear and tear, insurance and gas), (2) restoration to her position and job duties, which she had prior to the raising of the FLSA issues (injunctive relief), (3) damages for the

retaliation (lost pay, and emotional suffering), (4) any other relief the Court deems fair and just.  Any other relief that the FLSA provides for, and any other relief that Court deems fair and just.

DATED this 21th day of June, 2017.

/s/  Gregory B. Smith<br>*Attorney for Plaintiff*